## DILLON v KEATINGTON RACQUETBALL CLUB

Docket No. 85101. Submitted March 13, 1986, at Detroit. Decided
April 21, 1986. Leave to appeal denied, 425 Mich 884.

David Dillon was injured while playing a pick-up game of Walley-
ball at a sports facility owned by Keatington Racquetball Club.
David and Christine Dillon brought an action in Oakland
Circuit Court against Keatington Racquetball Club and David
Barkley, an attendant at the club, alleging that defendants
were negligent in allowing more players to play on a team than
were allowed in the standard Walleyball rules, thus overcrowd-
ing the court and leading to David Dillon's injuries. Defendants
moved for summary judgment. The trial court, John N.
O'Brien, J., granted defendants' motion. Plaintiffs appealed.
*Held:*

There is no common-law duty for the operator of a sports
facility to supervise the activities of its adult patrons in the
conduct of the games played upon the premises so as to ensure
that the participants in the game obey the standard rules or do
not take unreasonable risks. Since defendants breached no duty
of care, summary judgment in their favor was proper.

Affirmed.

1. NEGLIGENCE — DUTY.

"Duty" in an action for negligence comprehends whether the
defendant is under any obligation to the plaintiff to avoid
negligent conduct; it does not include—where there is an
obligation—the nature of the obligation: the general standard
of care and the specific standard of care.

2. TORTS — DUTY OF CARE — SPORTS FACILITIES.

An owner of a sports facility who rents out court space to persons
wishing to engage in athletic events, except under special
circumstances, is under no common-law duty with respect to
adult participants to supervise the activities of the patrons in

REFERENCES

Am Jur 2d, Amusements and Exhibitions §§ 52 *et seq.*

Am Jur 2d, Negligence §§ 33 *et seq.*

Liability of owner or operator of skating rink for injury to patron.
21 ALR3d 911.

the conduct of their games to ensure that the participants obey the standard rules of the game or do not take unreasonable risks.

*Theodore S. Andris,* for plaintiffs.

*Zamplas, Paskin, Nagi, Baxter, Johnson & Walker, P.C.* (by *Jeanette A. Paskin*), for defendants.

Before: BRONSON, P.J., and R. B. BURNS and J. E. TOWNSEND,* JJ.

R. B. BURNS, J. Plaintiffs appeal from the trial court's grant of summary judgment in favor of defendants for failure to state a claim upon which relief could be granted. GCR 1963, 117.2(1), now MCR 2.116(C)(8).

Although no facts have been established below, it appears that plaintiff David Dillon was injured while engaged in a game of "Walleyball" at defendant Keatington Racquetball Club's facility. Walleyball is, essentially, volleyball played on a racquetball court. Plaintiffs allege that Mr. Dillon's injuries arose from defendants' allowing five individuals to play on one team, overcrowding the court. According to plaintiffs, the official Walleyball rules provide that teams shall consist of 2, 3, or 4 people.

On the evening of the accident, Mr. Dillon arrived at defendant club to play Walleyball in a "pick-up" game. That is, various club members gathered together until there was a sufficient number of players. The players did not necessarily know each other. Apparently, Mr. Dillon was the seventh player. Shortly after his arrival, the attendant, defendant Barkley, announced that two additional players had arrived. The group split into

---

* Circuit judge, sitting on the Court of Appeals by assignment.

teams of four and five each. Mr. Dillon was on the five-member team. Allegedly, at some point during the second game, Mr. Dillon collided with a teammate and was injured. Plaintiffs allege that defendants were negligent in allowing five people to play on one team, thus overcrowding the court. The trial court granted summary judgment, concluding defendants owed plaintiffs no duty:

> *The Court:* Okay. I agree with your analysis of the law, counsel, but I don't find a duty in the first instance. I think that a person or business who rents a court to members of the public should not be obliged by duty to enforce rules of some game that is being played by the ones who rented that space. Accordingly, the motion will be granted.

The sole question before us is whether a recreational facility and its agents owe a duty to its members or customers to supervise informal games to ensure compliance with the games' rules. This is a question of first impression.

The Court in *Moning v Alfono,* 400 Mich 425, 437-438; 254 NW2d 759 (1977), discussed the concept of duty:

> "Duty" comprehends whether the defendant is under *any* obligation to the plaintiff to avoid negligent conduct; it does not include—where there is *an* obligation—the nature of the obligation: the general standard of care and the specific standard of care.
>
> Dean Prosser observed:
>
> "It is quite possible, and not at all uncommon, to deal with most of the questions which arise in a negligence case in terms of 'duty.' Thus, the standard of conduct required of the individual may be expressed by saying that the driver of an automobile approaching an intersection is under a duty to moderate his speed, to keep a proper lookout, or to

blow his horn, but that he is not under a duty to take precautions against the unexpected explosion of a manhole cover in the street. But the problems of 'duty' are sufficiently complex without subdividing it in this manner to cover an endless series of details of conduct. *It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other,* and to deal with particular conduct in terms of a legal standard of which is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under *any* obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. *What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.*" Prosser, Torts (4th ed), § 53, p 324 (emphasis supplied).

Thus, we must determine whether defendants were under a legal obligation to enforce the rules of the game or to prevent overcrowding. Certainly there is no statutory duty to do so that is applicable to this case.[1] A duty could arise from a contractually incurred obligation. That is, a contract could provide that the proprietor would provide supervision to insure the players' safety. However, in this case plaintiffs plead no such obligation.

Moreover, we are unwilling to impose a common-law duty on defendants to supervise the activities of their patrons in the conduct of their games to ensure that the participants obey the standard rules or do not take unreasonable risks.[2] Such a

---

[1] There are circumstances where statute or regulation could establish such a duty, such as a fire regulation limiting capacity of an establishment. However, plaintiffs' injuries did not flow from a fire code violation.

[2] We specifically note that plaintiffs do not allege that the team-size rules are safety related.

burden would be unduly onerous and patronizing. Although it may be appropriate to impose a duty to supervise where the participants are children, no such duty should exist where, as here, the participant is a thirty-eight-year-old adult. A duty to supervise might also arise where the nature of the acitivity carries with it the possibility of danger from which the participant could not extricate himself. Specifically, a situation akin to a public swimming pool or beach where there may be a duty to provide a lifeguard. See *Kreiner v Yezdbick,* 22 Mich App 581; 177 NW2d 629 (1970).

It would, however, be inappropriate to impose a duty of supervision in the present case. This is not a case where, like a swimmer, the participant may need to be rescued if difficulty develops. The potential liability in *Kreiner, supra,* centered around the defendant's failure to provide a lifeguard, life-saving equipment, and safe conditions. Liability was not premised on a lifeguard's failure to enforce swimming rules.

Certainly a recreational facility owes certain duties to its patrons, such as supplying premises and equipment reasonably free of defects. However, we conclude that, absent special circumstances, such as the participant's age, the facility has no obligation to supervise the patrons to ensure that they play the game according to the rules or otherwise in a safe manner. Since no such circumstances were pled here, the trial court's grant of summary judgment was correct.

Affirmed. Costs to defendants.