# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00990-SCT

*DARRIN ROLISON*

*v.*

*THE CITY OF MERIDIAN, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/01/94 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANNY K. CLEARMAN |
| ATTORNEY FOR APPELLEE: | ARLO TEMPLE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 3/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/7/97 |

**BEFORE DAN LEE, C.J., PITTMAN AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Darrin Rolison appeals a grant of summary judgment issued against him in the Circuit Court of Lauderdale County.

¶2. On June 21, 1993, Darrin Rolison filed a complaint against Jerry Wyrick, Jr., and the City of Meridian (the City), alleging that during a softball game conducted under the supervision of officials chosen and compensated by the City, Wyrick negligently threw a bat seriously injuring Rolison. The complaint further alleged that the officials used by the City were negligently selected and inadequately trained and that the City permitted the games to be conducted in an unreasonably unsafe manner.

¶3. On July 13, 1993, the City answered and initially pled assumption of the risk. The City later amended its answer and raised the additional defense that the Meridian Umpires Association, an independent contractor, employed officials of the games. The City later again amended its answer to raise the further defense that the officials conducting the games were immune from liability by statute, and that such immunity flowed to the City.

¶4. The lower court found, by summary judgment, that the accident was not foreseeable and was not

proximately caused or contributed to by the negligence of the City. The lower court further found that no relationship of employer and employee or principal and agent existed and that the Meridian Umpire Association was an independent contractor. Based on these findings, the lower court dismissed the suit against the City with prejudice.

¶5. Rolison timely filed his appeal to this Court assigning as error the following issues:

> **I. Whether a question of material fact exists as to whether the injuries suffered by Rolison were a foreseeable consequence or were proximately caused or contributed to by the negligence of the City of Meridian?**
>
> **II. Whether the trial court erred by finding that the Meridian Umpire Association, an insolvent unincorporated association, is an independent contractor and thus no relationship of employer and employee or principal and agent existed between that organization, or its members, and the City of Meridian?**

## FACTS

### A. The accident

¶6. On June 25, 1992, Rolison participated in a softball game at the Sammie Davidson Complex in Meridian. While playing in this game, Wyrick, Rolison's teammate, hit a "pop fly" ball with two outs. Thereafter, Wyrick released his bat and it flew through the air approximately fifteen yards striking Rolison in the head. Rolison was struck while on his way from third base to home plate. The bat knocked Rolison unconscious and, because of his injury, he was transported to a local hospital. As a result of the accident, Rolison lost the use of five percent of his brain and suffered other injuries.

¶7. Although Wyrick indicated that the bat only slipped from his hand, he apologized for throwing it in anger. Wyrick, before being rehabilitated by counsel, indicated that the accident might have been avoided if the City had taken action against bat slinging in the past. It was indicated that the throwing of bats during league play in the City may have become commonplace. Virtually no action was taken by the officials to end this practice.[1]

### B. Control of the games

¶8. The City maintained general oversight of softball games at the park and had the authority to bar individual players, or entire teams, from participation in league play for disciplinary reasons. However, the umpires were the only persons who had direct control over the games and the responsibility of enforcing the rules of the games and the game in question.

¶9. A few years before the accident, the City began contracting with the Meridian Umpire Association (the Association) to provide officials for the games. The Association allegedly is not incorporated, carries no liability insurance, and is without significant assets. The City pays the Association an agreed amount for providing officials for the games. The Association, in turn, pays the officials according to the number of games officiated. At the end of the season, any funds not disbursed by the Association to the officials are returned to the City.

¶10. According to the affidavit of Rhonda Brand, who was and had been the Athletic Director of the

Parks and Recreation Department of the City, the City supervised the softball league during 1992. The City's supervision included receipt of team fees of $250.00 paid by the participating teams. The City obtained rosters of teams and put teams in various leagues or groups. The City scheduled the games, provided and maintained the fields, and turned the lights on and off as needed. At the end of the season the City paid for and awarded trophies. The teams or their sponsors paid for all uniforms, balls, bats, gloves, and equipment used by the teams.

¶11. During the 1992 softball season, there were 774 softball games scheduled at the Sammie Davidson Complex. At the time of the accident, Rolison had been playing for a couple of months. The games were played and conducted under the rules of the American Softball Association of America (ASA).

¶12. The Meridian Umpires Association (MUA) was not a part of the City government, but according to Brand, was a group of individuals who had special training as umpires. Their training and instruction were continued from time to time so that they would be competent sports officials. Two umpires officiated each game, including the game in which Rolison was injured on June 5, 1992.

¶13. The umpires had the responsibility of enforcing the rules of the games, such as disciplining a player or team for unsportsmanlike conduct. They determined what discipline should apply as accorded under the rules. Discipline of a player could include ejection from a game for throwing bats. The discipline depended on the gravity of the situation, and the umpires' determination of the applicable rules.

¶14. The umpires were trained and certified by the ASA as competent umpires, including the ones umpiring on the date in question. The MUA selected the umpires and chose the times they worked and the games they officiated. The City did not employ the umpires, did not have a right to discharge them, and did not pay them, except as provided in the contract. The City did not pay or withhold social security, unemployment, or income tax for the umpires, and did not provide any insurance for the MUA or its members.

¶15. Mr. Howard Beeland, the president of the Meridian Umpire Association during the time of the accident, submitted an affidavit substantially verifying the City's version of the facts. Also, the commissioner of the ASA in Lauderdale County stated by affidavit that the ASA is a national softball organization and that the MUA's umpires were specially trained and experienced in serving as umpires during the 1992 softball games. Likewise, the Parks and Recreation Director of the City of Meridian, Allan Naylor, submitted an affidavit saying the MUA had a contract with the City to provide umpires for adult softball games.

## STANDARD OF REVIEW

¶16. As was restated in *Ellis v. Powe*, 645 So. 2d 947 (Miss. 1994):

> In determining whether the trial court properly granted a motion for summary judgment this Court conducts a de novo review of the record. *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993); *Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992).

A trial court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56. A fact is material if it "tends to resolve any of the issues, properly raised by the parties." *Webb v. Jackson*, 583 So. 2d 946, 949 (Miss. 1991) (citing *Mink v. Andrew Jackson Cas. Ins. Co.*, 537 So. 2d 431, 433 (Miss. 1988) (quoting *Mississippi Road Supply v. Zurich-American Ins. Co.*, 501 So. 2d 412, 414 (Miss. 1987)). The evidence must be viewed in the light most favorable to the nonmoving party. If, in this view, the moving party is entitled to a judgment as a matter of law, then summary judgment should be granted in his favor. Otherwise, the motion should be denied. *Brown v. Credit Center, Inc.,* 444 So. 2d 358, 362 (Miss. 1983).

*Morgan v. City of Ruleville*, 627 So. 2d 275, 277 (Miss. 1993).

Where doubt exists as to whether there is a genuine issue of material fact, the trial judge should err on the side of denying the motion and permitting a full trial on the merits. Where the record is incomplete regarding any material fact, the summary judgment motion should generally be denied. *American Legion Ladnier Post 42, Inc. v. City of Ocean Springs*, 562 So. 2d 103, 106 (Miss. 1990).

The comment to Rule 56 of the Mississippi Rules of Civil Procedure states in part:

A motion for summary judgment lies only when there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Given this function, the court examines the affidavits or other evidence introduced on a Rule 56 motion simply to determine whether a triable issue exists, rather than for the purpose of resolving that issue.

*Ellis v. Powe*, 645 So. 2d at 950.

## LAW

**WAS THE CITY OF MERIDIAN ENTITLED TO SUMMARY JUDGMENT IN THE TRIAL COURT?**

**1. Whether a question of material fact exists as to whether the injuries suffered by Rolison were a foreseeable consequence or were proximately caused or contributed to by the negligence of the City of Meridian?**

¶17. The Court is asked to consider whether a genuine issue of material fact exists as to whether proximate cause exists between the alleged negligence of the City and the injuries of Rolison.

¶18. Negligence consists of a duty and a breach of that duty. In *Dillon v. Keatington Racquetball Club*, 390 N.W. 2d 212, 214-215 (Mich. 1986), a Michigan appellate court said in part:

Moreover we are unwilling to impose a common law duty on defendants to supervise the

activities of their patrons in the conduct of their games to ensure that the participants obey the standard rules or do not take unreasonable risks. Such a burden would be unduly onerous and patronizing. Although it may be appropriate to impose a duty to supervise where the participants are children, no such duty should exist where, as here, the participant is a 38 year old adult. Such a duty to supervise might also arise where the nature of the activity carries with it the possibility of danger from which the participant could not extricate himself. Specifically, a situation akin to a public swimming pool or beach where there may be a duty to provide a lifeguard.

. . . .

Certainly a recreation facility owes certain duties to its patrons such as supplying premises and equipment free from defects. However, we conclude that, absent special circumstances, such as the participant's age, the facility has no obligation to supervise the patrons to ensure that they play the game according to the rules or otherwise in a safe manner.

390 N.W. 2d at 214-215. We agree.

¶19. The elements of proof required to support a claim for damages for negligence are a duty, a breach of that duty, damages, and proximate cause. *Grisham v. John Q. Lona V.F.W. Post, No. 4057, Inc.*, 519 So. 2d 413 (Miss. 1988); *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So. 2d 1186 (Miss. 1994). The damages must be reasonably foreseeable. Ordinary care does not require that a person prevision unusual, improbable or extraordinary occurrences. Failure to anticipate remote possibilities does not constitute negligence. *Crain v. Cleveland Lodge 1532 Order of Moose, Inc., supra; Grisham, supra; Pargas of Taylorsville, Inc. v. Craft*, 249 So. 2d 403 (Miss. 1971); *Sturdivant v. Crosby Lumber & Mfg. Co.*, 218 Miss. 91, 65 So. 2d 291 (1953); *Vincent v. Barnhill*, 203 Miss. 740, 34 So. 2d 363 (1948); *Mauney v. Gulf Refining Co.*, 193 Miss. 421, 9 So. 2d 780 (1942); and *Illinois Central R. Co. v. Bloodworth*, 166 Miss. 602, 145 So. 333 (1933).

¶20. This Court discussed foreseeability in *Mauney* as follows:

The rule is firmly established in this state, as in nearly all the common law states, that in order that a person who does a particular act which results in injury to another shall be liable therefor, the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom, but that the actor is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities. This rule is affirmed in one way or another in cases which will run into the hundreds in this state.

. . . .

Hence, the law must say, as it does that "care or foresight as to the probable effect of an act is not to be weighed on jewelers' scales, nor calculated by the expert mind of the philosopher, from cause to effect, in all situations," *Illinois Cent. R. Co. v. Bloodworth*, 166 Miss., page 618, 145 So. page 336; and that it would impose too heavy a responsibility for negligence to

hold the tort feasor accountable for what was unusual and unlikely to happen, or for what was only remotely and slightly probable. . . . "A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard-of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible."

9 So. 2d at 780-781 (citations omitted).

¶21. In both *Grisham* and *Crain*, plaintiffs were assaulted and injured on the premises. In *Crain*, the Court discussed foreseeability and said, in part, as follows: "In both *Grisham* and *Kelly*, the Court emphasized that the <u>foreseeability</u> of the injury sustained provided the touchstone for liability." *Crain*, 641 So. 2d at 1189 (emphasis original).

¶22. Every person who testified by deposition or provided an affidavit in this case on the subject, including Rolison, said there was no way to foresee that a player would throw a bat. All that could be done was to discipline a player for the misconduct.

¶23. Based on the uncontradicted evidence before the Court, the accident in question was not reasonably foreseeable and could not be prevented. Thus, even when viewing the evidence in the light most favorable to Rolison, this Court concludes there is no issue of material fact as to the foreseeability of this accident occurring.

> **2. Whether the trial court erred by finding that the Meridian Umpire Association, an alleged insolvent unincorporated association, is an independent contractor and thus no relationship of employer and employee existed between that organization, or its members, and the City of Meridian?**

¶24. The City contracted with MUA to provide umpires for softball games. The City exercised no control over the umpires. Special training was provided by MUA. The umpires were in charge of the games and discipline. The City did nothing except pay the MUA to provide competent umpires to officiate at softball games.

¶25. As to the question of whether or not MUA was an independent contractor, this Court follows *Richardson v. APAC-Mississippi, Inc.,* 631 So. 2d 143 (Miss. 1994) (independent contractor distinguished from servant or agent). In *Richardson,* this Court stated "in determining whether a master-servant or independent contractor relationship existed, especially where third parties are affected, courts are not confined to the terms of the contract, but may look as well to the conduct of the parties." *Id.* at 151 (citations omitted). The Court, in *Richardson*, affirmed the trial court's grant of summary judgment on the grounds that the relationship of the parties was that of principal and independent contractor as a matter of law, and not master and servant. As in *Richardson*, according to the affidavits, every factor used in determining which of the two relationships exists is in favor of a principal and independent contractor. The Court said further it would take into account adverse effect on rights of a third party, such as whether or not the alleged servant or agent could be required to respond in damages. *Id.* at 151.

¶26. Rolison contends in his brief that based on Sims' affidavit, MUA is an association which had no liability insurance based on Sims' affidavit. Sims does say MUA as an association had no insurance but the members of MUA had liability insurance. Rolison claims he cannot sue MUA because it is an unincorporated association. He also submits that as an unincorporated association, it lacks even the fundamental capacity to contract. 7 C.J.S., *Associations*, Section 37 (1980).

¶27. This Court notes that suits are permitted against unincorporated associations. ***Beta Beta Chapter of Beta Theta Pi Fraternity v. May***, 611 So. 2d 889, 891-94 (Miss. 1992). Rolison could certainly sue any individual who was liable. Rolison could and did sue Wyrick, who had insurance.

¶28. This Court finds that the relationship between MUA and the City was that of an independent contractor and its principal.

¶29. In regards to the umpires, they are immune from liability under **Miss. Code Ann.** § 95-9-3, as amended. Under § 95-9-3, sports officials who officiate athletic contests in this state shall not be liable for injuries or damages arising out of officiating duties at the place where the contest is played. "Sports officials" are defined as individuals who serve as umpires (and others) who are duly registered or members of a local, state, regional, or national organization which is engaged in part in providing education and training to sports officials. It is undisputed that the umpires in this case belonged to a local organization (MUA) and a national organization (ASA) which are both engaged in providing education and training to sports officials.

¶30. An exception mentioned in the statute are acts which are intentional, willful, wanton, reckless, malicious or grossly negligent. There is no evidence that supports this exception.

## CONCLUSION

**¶31.** This Court upholds the summary judgment granted to the City of Meridian before the lower court, and concludes that the City is immune from liability in this case.

¶32. **AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. BANKS, J., CONCURS IN PART AS TO ISSUE I ONLY. McRAE, J., CONCURS IN RESULT ONLY.**

1. Rolison in his deposition testified he did not blame the City with any wrongs relating to the lights, the field, nor anything else, except umpires.