STOPCZYNSKI v WOODCOX

Docket No. 239855. Submitted August 5, 2003, at Lansing. Decided August
    26, 2003, at 9:10 A M.

Seventeen-year-old Danielle Stopczynski died from injuries sustained
    when she dove into an aboveground swimming pool at the home of
    Deborah L. Woodcox, who was not there when the accident
    occurred. The decedent was with her boyfriend, Woodcox's adult
    nephew, and had used the pool many times before the accident.
    Patricia Stopczynski, as personal representative of the decedent's
    estate, brought a negligence action in the Lapeer Circuit Court
    against Woodcox, alleging that the defendant breached a duty owed
    the decedent by failing to adequately supervise the decedent while
    she was in the pool, failing to warn the decedent of the dangers
    associated with using the pool, failing to exercise due care and cau-
    tion, failing to maintain the premises in a reasonably safe condi-
    tion, and failing to timely provide assistance to the decedent after
    injury was apparent. The defendant moved for summary disposi-
    tion, arguing that there was no breach of duty because the dece-
    dent was a licensee and because of the doctrine of open and obvi-
    ous danger. The court, Nick O. Holowka, J., denied the motion, rul-
    ing that the defendant owed the decedent, a child social guest, a
    duty of reasonable or ordinary care to prevent injury to her and
    that there was a genuine issue of material fact regarding whether
    the danger was open and obvious. The defendant appealed by leave
    granted.

    The Court of Appeals held:

    1. A premises owner owes a child social guest the same duty
    owed to an adult social guest. A social guest is a licensee to whom
    the host owes only the duty to refrain from active wrongdoing, and
    to warn of dangers known to the host and not likely to be discov-
    ered by the guest. The open and obvious danger doctrine precludes
    recovery in a premises liability case for dangers associated with
    the use of an aboveground swimming pool. While Supreme Court
    precedent holds that the open and obvious danger doctrine does
    not apply where the condition poses such a high risk of serious
    injury or death that, even if open and obvious, the premises owner
    should eliminate the condition entirely, the doctrine applies to

premises liability cases that involve aboveground pools shallow enough for divers to hit bottom. The Supreme Court could not have intended that all swimming pools in Michigan shallow enough to allow a diver to hit bottom be removed. The trial court in this case erred in denying the defendant's motion for summary disposition of the premises liability claims.

2. In the absence of evidence showing that the defendant voluntarily assumed a duty to supervise the decedent while she was on the defendant's premises, the defendant owed no duty of supervision. The trial court erred in denying the defendant's motion for summary disposition of the claim of failure to supervise.

3. The plaintiff's claim that the defendant negligently failed to render timely assistance to the decedent after the accident was not addressed on appeal. The claim remains viable, but the defendant may challenge the claim by motion for summary disposition in the trial court.

Reversed and remanded for entry of summary disposition for the defendant on all claims other than the claim of failure to render timely assistance.

1. NEGLIGENCE — PREMISES LIABILITY — ABOVEGROUND SWIMMING POOLS — OPEN AND OBVIOUS DANGERS — CHILD SOCIAL GUESTS.

The doctrine of open and obvious danger precludes recovery from an owner of an aboveground swimming pool on claims of premises liability for the injury or death of a child social guest who dives into and hits the bottom of the pool.

2. NEGLIGENCE — PREMISES LIABILITY — CHILD SOCIAL GUESTS.

A premises owner owes a duty to supervise an unaccompanied child social guest, and may be liable for negligent supervision, only where the premises owner has voluntarily assumed responsibility for supervision.

*Morris & Doherty, P.C.* (by *Janis L. Adams* and *Paul F. Doherty*), for the plaintiff.

*Romain, Kuck & Egerer, P.C.* (by *Timothy E. Egerer* and *Douglas J. Curlew*), for the defendant.

Before: HOEKSTRA, P.J., and SAWYER and ZAHRA, JJ.

SAWYER, J. Defendant appeals by leave granted from an order of the circuit court denying her motion for summary disposition. We reverse. This appeal is being

decided without oral argument pursuant to MCR 7.214(E)(1)(b).

Plaintiff's decedent died from injuries sustained on June 19, 2000, when she apparently dove into defendant's aboveground swimming pool and struck her head on the bottom. The pool was four feet tall, with the water level a few inches below that. Although the pool originally had stickers around the edge that said "no diving," the barrier on which those stickers were placed had been replaced in 1999 with a latticework fence that lacked any warnings.

Decedent was seventeen years old at the time of accident. She was a friend of defendant's son and had used the pool "hundreds" of times in the past. Decedent resided with her thirty-four year old boyfriend, Robert Waeiss, who was defendant's nephew. Decedent and Waeiss had gone to defendant's pool on the day of the incident while defendant was away.[1] Defendant's son, Michael Woodcox, noticed decedent floating face down in the pool and told Waeiss to check on her. Waeiss apparently believed that decedent was simply doing the "dead man's float" and was holding her breath. However, when he turned her over, he saw that her face was blue. Help was summoned. Decedent had suffered a fractured neck and spinal cord, and she died two days later.

Plaintiff sued defendant for negligence, alleging that defendant owed decedent a duty of due care to prevent injury to decedent and, after decedent was injured, to timely render assistance. Specifically, plaintiff alleged that defendant breached that duty by

---

[1] Apparently, decedent and Waeiss were permitted to use the pool even in defendant's absence. Defendant is not claiming that the decedent was a trespasser at the time of the accident.

failing to adequately supervise decedent while in the pool, failing to warn decedent of the dangers associated with using the pool, failing to exercise due care and caution, failing to maintain the premises in a reasonably safe condition, and failing to render timely assistance to decedent after injury was apparent.

Defendant filed a motion for summary disposition, arguing that there was no breach of duty because decedent was a licensee at the time of the accident and because of the open and obvious danger doctrine. The trial court denied the motion, holding that defendant owed decedent, a minor and a social guest, a duty of reasonable or ordinary care to prevent injury to her and that there was a genuine issue of material fact regarding whether the danger was open and obvious. Defendant filed an application for leave to appeal, raising three issues: that defendant owed decedent the duty due a licensee, that the open and obvious danger doctrine precludes liability by defendant in this case, and that defendant has no liability for failure to supervise decedent. We granted defendant leave to appeal.

We review the grant or denial of a motion for summary disposition de novo, examining the entire record to determine whether the moving party was entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and, after considering the evidence in the light most favorable to the nonmoving party, summary disposition is appropriate if the proffered evidence fails to establish a genuine issue regarding any material fact. *Maiden, supra* at 120.

The first issue raised is whether defendant owed decedent the same duty owed an adult social guest. This question arises because this Court, in *Klimek v Drzewiecki*, 135 Mich App 115, 119-120; 352 NW2d 361 (1984), held that the duty owed to a minor social guest is greater than that owed to an adult social guest:

> Moreover, the rule stated in *Preston* [*v Sleziak*, 383 Mich 442; 175 NW2d 759 (1970),] was expressly limited to *adult* social guests. No Michigan authority since *Preston* had discussed the duty owed by an occupier of land to a child social guest. See, however, *Moning v Alfono*, 400 Mich 425, 444-445; 254 NW2d 759 (1977), in which the Court recognized that, where children are involved, special rules imposing higher degrees of care are not unusual. In 62 Am Jur 2d, Premises Liability, § 135, p 402, the trend in other jurisdictions is summarized:
>
> "The rule that a social guest is a licensee to whom the host owes only the duty to refrain from active wrongdoing, and to warn of dangers known to him and not likely to be discovered by the guest, is applied to child social guests in a number of jurisdictions; but in an increasing number of jurisdictions, the courts hold the host to a duty of reasonable or ordinary care to prevent injury to a child social guest." (Footnotes omitted.)
>
> See also Anno: *Liability for injury or death of child social guest*, 20 ALR3d 1127, § 3(b), pp 1136-1140, and the cases discussed therein. These authorities lead us to recognize a duty on the part of occupiers of land owed to a child social guest to exercise reasonable or ordinary care to prevent injury to the child. Plaintiff's complaint was sufficient to state a claim on which relief could be granted for breach of such a duty.

However, whether *Klimek* remains viable is relevant to this case only if it affects the application of the open and obvious danger doctrine.

To answer this question, plaintiff directs our attention to this Court's decision in *Pigeon v Radloff*, 215 Mich App 438; 546 NW2d 655 (1996). The facts in *Pigeon* are similar to those in the case at bar. The plaintiff was fifteen years old when he was injured and rendered a quadriplegic while diving in the defendants' aboveground swimming pool. The defendants were not home at the time of the accident, the plaintiff having been invited over to swim by the defendants' son. The majority in *Pigeon*, relying on *Klimek* and other decisions, concluded that a jury question is posed whether a particular minor could realize the full extent óf the risks involved, even where the danger is open and obvious. *Pigeon, supra* at 444-445. The dissent, however, rejected that reasoning:

> There is no doubt that were plaintiff an adult, the open and obvious danger doctrine would preclude recovery on the premises liability claim. The Supreme Court has held, in the context of a products liability case, that the open and obvious danger doctrine precludes recovery for dangers associated with the use of an aboveground swimming pool. *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379; 491 NW2d 208 (1992). Furthermore, the Supreme Court has extended the open and obvious danger doctrine to premises liability cases, *Riddle v McLouth Steel Products Corp*, 440 Mich 85; 485 NW2d 676 (1992). Additionally, this Court has held that the open and obvious danger doctrine applies to minors in products liability cases, specifically an aboveground swimming pool case. *Mallard v Hoffinger Industries, Inc*, 210 Mich App 282; 533 NW2d 1 (1995). Thus, there is clear precedent favoring defendants were this a products liability case or a premises liability case involving an adult plaintiff. The majority, however, believes this case is distinguishable because it is a premises liability case involving a minor plaintiff, a permutation that apparently has not yet been decided by this Court.

I fail to see any reason to distinguish this case merely because plaintiff is a minor. In *Mallard, supra* at 285-286, this Court explained why the open and obvious danger doctrine, in the context of a products liability case, applies to children as well as adults:

"Because the determination of the obvious nature of the danger is an objective one that focuses on the typical pool user, and because it is not necessary that the user understand the precise nature of every possible injury that might result from diving into an above-ground pool, we are unable to distinguish this case from *Glittenberg* on the basis of the victim's age. We tend to agree with defendant Pool Town's comment that, if a child is capable of understanding a warning, the dangerous condition would be obvious to the child, rendering the warning unnecessary. Conversely, if the condition is not obvious to the child, then a warning would likely be of little use."

This reasoning is as applicable to premises liability cases as it is to products liability cases. That is, in either case, if the minor is sufficiently immature to appreciate the dangerous condition, he is also sufficiently immature to appreciate the warning. [*Pigeon, supra* at 447-448 (SAWYER, J., dissenting).]

We find this reasoning to be more persuasive. Because the Supreme Court ordered that our decision in *Pigeon* is to have no precedential force or effect, *Pigeon v Radloff,* 451 Mich 885 (1996), we are not bound to follow this Court's majority decision in *Pigeon.* Therefore, we choose to adopt the reasoning of the dissent.

Accordingly, absent a change in the law following the *Glittenberg* decision, we believe that defendant would be entitled to summary disposition on the premises liability claims. Plaintiff argues that such a change in the law occurred with the Supreme Court's decision in *Lugo v Ameritech Corp, Inc,* 464 Mich 512; 629 NW2d 384 (2001). We disagree. In *Lugo,* the

Court acknowledged that the open and obvious danger doctrine will not preclude liability where there are "special aspects" to the open and obvious condition that create an unreasonable risk of harm. *Id.* at 517. The Court offered the examples of a floor of a commercial building covered with standing water that blocks the only public exit from the building and of an unguarded thirty-foot deep pit in the middle of a parking lot. In the first example, a person is obligated to face the danger even if it is open and obvious. In the second example, there is an unreasonably high risk of severe harm because even though a person may be capable of avoiding the harm, it would be unreasonably dangerous to maintain the condition even if it is open and obvious. *Id.* at 518.

Plaintiff argues that this second aspect, an unreasonably high risk of harm, applies to the case at bar to effectively remove swimming pool diving accidents from the open and obvious danger doctrine as announced in *Glittenberg.* We disagree. Plaintiff's argument overlooks the *Lugo* Court's comments in footnote two:

[T]his opinion does not allow the imposition of liability merely because a particular open and obvious condition has some potential for severe harm. Obviously, the mere ability to imagine that a condition could result in severe harm under highly unlikely circumstances does not mean that such harm is reasonably foreseeable. However, we believe that it would be unreasonable for us to fail to recognize that unusual open and obvious conditions could exist that are unreasonably dangerous because they present an extremely high risk of severe harm to an invitee who fails to avoid the risk in circumstances where there is no sensible reason for such an inordinate risk of severe harm to be presented.

*     *     *

> . . . To consider our admittedly extreme example, while it
> is reasonable to expect invitees to avoid common potholes,
> that does not mean it is reasonable to leave a gaping hole in
> a parking lot even though the difference in the degree of
> harm likely to follow from an invitee's failure to avoid the
> hazard is the only material difference between the two situ-
> ations. [*Lugo, supra* at 518-519 n 2.]

We read this discussion in *Lugo* to mean that the
open and obvious danger doctrine does not apply
where the condition poses such a high risk of serious
injury or death that, even if open and obvious, the
premises owner should eliminate the condition
entirely. To apply that principle to the case at bar
would, in our view, require the conclusion that the
condition (swimming pools shallow enough for a
diver to hit bottom) must be eliminated. In other
words, we would have to conclude that "there is no
sensible reason for such an inordinate risk of severe
harm to be presented," *id.* at 519 n 2, that "inordinate
risk" being the existence of shallow swimming pools.
In sum, we do not believe that the Supreme Court
intended in *Lugo* to compel the conclusion that *Glit-
tenberg* was effectively overruled and to essentially
require that all swimming pools in Michigan shallow
enough to allow a diver to hit bottom be removed.

For these reasons, we conclude that the trial court
erred in failing to grant summary disposition to defen-
dant on the premises liability claims under the open
and obvious danger doctrine.

Next, defendant argues that the trial court erred in
denying summary disposition on the claim of failure
to supervise. Defendant argues that, because she was
not present at the time of the accident, but decedent's

thirty-four-year-old boyfriend was, any duty to supervise belonged to him, not defendant.

The *Pigeon* case also involved a duty to supervise claim and we again find the dissent to be persuasive:

> The more relevant question, I believe, is the need or duty to supervise the minor while on the premises. This is the basis of plaintiff's second claim, the lack of adequate supervision by defendants while plaintiff was on the property and using the pool. This is admittedly a stronger argument for plaintiff than the premises liability claim, but one that, I believe, nevertheless must fail. The majority dismisses the trial court's reliance on *Bradford v Feeback*, 149 Mich App 67, 70; 385 NW2d 729 (1986), noting that *Bradford* involved the children of guests and not children who were guests. The majority notes that in *Bradford*, the parents of the children were the guests themselves of the premises owner and, therefore, were in a position to supervise their own children directly and did not need to rely upon the premises owner to do so. This, however, begs the question in this case regarding whether plaintiff was sufficiently immature as to need supervision.
>
> As the majority acknowledges in its opinion, plaintiff was not invited to the property by defendants, but, rather, by their son. The majority further acknowledges that defendants were not even home at the time of the accident.
>
> Thus the majority would impose liability on defendants for failure to supervise a guest not invited by themselves and who was allowed to come to their home and swim unsupervised by his own parents. Furthermore, plaintiff points to no evidence that he obtained permission to go to defendants' home to swim contingent upon a promise by defendants to supervise him once he arrived. That is, defendants would certainly be liable for a failure to supervise plaintiff had they voluntarily assumed a duty to do so. But plaintiff points to no evidence that such a duty was voluntarily assumed.
>
> In short, I believe that the lesson to be learned from *Bradford, supra*, is not that social guests have a responsibility to supervise the children they bring with them.

Rather, it is that parents have a duty to supervise their own children, or determine that their children are of sufficient age and maturity to no longer need such supervision. In either event, the responsibility lies with the parent, not the premises owner. When a minor visits the home of another person, three possible situations exist: (1) the minor has been allowed to go there unsupervised, (2) the parents accompany the child and supervise him, or (3) the parents do not accompany the child, but allow the child to go only with the understanding that there will be a responsible adult, such as the premises owner, present to supervise the child because the parents have determined the child is still in need of supervision. In my view, it is only under this third condition, where the premises owner has assumed responsibility for supervising the unaccompanied child, that the premises owner owes a duty to supervise the minor guest and is liable for any negligent supervision. [*Pigeon, supra* at 448-450 (SAWYER, P.J., dissenting).]

The facts in the case at bar are slightly different. First, decedent was not specifically invited by either defendant or her son to use the pool on the day of the accident. However, plaintiff alleges that decedent had standing permission to use the pool so long as she did not swim alone. Secondly, there was adult supervision of decedent that day, albeit by the boyfriend, Waeiss.[2] In any event, there is no indication that defendant voluntarily assumed a duty. Accordingly, under the reasoning of the dissent in *Pigeon*, defendant had no duty to supervise the decedent and, therefore, the trial court should have granted sum-

---

[2] Defendant raises an interesting issue regarding whether Waeiss possessed the duty to supervise. It does not appear that decedent was formally emancipated. While the duty of supervision, if any, by an adult, who is not a guardian, over an unemancipated minor who resides with the adult presents an interesting question, it is a question we need not address in this opinion.

mary disposition to defendant on the claim of failure to supervise as well.

We do note, however, that defendant does not address on appeal any aspect of plaintiff's claim that defendant was negligent in failing to render timely assistance to decedent after the accident. Accordingly, we conclude that this claim remains viable, though defendant, of course, is free to challenge this issue by a motion for summary disposition in the trial court.

Reversed and remanded to the trial court with instructions to enter summary disposition in favor of defendant on all claims other than the claim of a failure to render timely assistance to decedent after the accident. We do not retain jurisdiction. Defendant may tax costs.