WHEELER v CENTRAL MICHIGAN INNS, INC

Docket No. 296511. Submitted April 6, 2011, at Lansing. Decided April 14, 2011, at 9:00 a.m.

LaToya F. Wheeler, personal representative of the estate of Domonique D. Wheeler, deceased, brought an action in the Ingham Circuit Court against Central Michigan Inns, Inc., after the minor decedent drowned in the swimming pool of the defendant's hotel. Plaintiff had taken Domonique and five other children to the hotel to celebrate Domonique's birthday and was watching Domonique and four of the children play in the pool from the deck of the pool when Domonique drowned. The pool complied with all relevant rules and regulations, which did not require defendant to provide a life guard. Plaintiff asserted claims for wrongful death, nuisance, and loss of consortium. The court, Paula J. M. Manderfield, J., agreed with defendant's contention that it had no duty to protect Domonique because the pool was an open and obvious danger and granted defendant's motion for summary disposition. Thereafter, the court, agreeing with plaintiff's argument that the wrongful-death claim was premised on a negligence theory, not a premises-liability theory, and that the open and obvious danger doctrine therefore did not apply, granted plaintiff's motion for reconsideration. Defendant again moved for summary disposition, arguing that it had no duty to supervise Domonique under the circumstances presented. The court agreed and again granted summary disposition in favor of defendant. Plaintiff appealed.

The Court of Appeals *held*:

1. Because plaintiff's cause of action sounded in ordinary negligence, rather than premises liability, the open and obvious danger doctrine was inapplicable. The trial court correctly recognized that property owners generally owe no duty to supervise the minor children of guests on their property.

2. Landowners have an affirmative duty to supervise minor guests only when a minor guest is unaccompanied by a parent and the landowner has voluntarily assumed a duty to supervise the minor. Domonique was accompanied by plaintiff, his mother, and defendant did nothing to indicate that it had voluntarily assumed

a duty to protect and watch Domonique. Defendant had no duty to supervise under the circumstances of this case.

Affirmed.

NEGLIGENCE — PROPERTY OWNERS — DUTY TO SUPERVISE MINOR GUESTS — UNACCOMPANIED MINOR GUESTS.

Property owners generally owe no duty to supervise the minor children of guests on their property; property owners have an affirmative duty to supervise minor guests only when a minor guest is unaccompanied by a parent and the property owner has voluntarily assumed a duty to supervise the minor.

*Alan J. Bloomfield* for plaintiff.

*Law Offices of Johnston, Sztykiel, Hunt, Goldstein, Fitzgibbons & Clifford, P.C.* (by *James F. Hunt*), for defendant.

Before: K. F. KELLY, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. LaToya Felicia Wheeler, as personal representative of the estate of Domonique Daquan Wheeler, deceased, appeals as of right the order granting defendant's motion for summary disposition of plaintiff's claims alleging wrongful death, nuisance, and loss of consortium. We affirm.

This case arises from the tragic drowning death of five year old Domonique Wheeler. On the night of Domonique's death, his mother, LaToya Wheeler, took Domonique and five other children, including her infant son, to defendant's Comfort Inn hotel to celebrate Domonique's sixth birthday, which was the next day. The group checked into two adjoining rooms and swam in the hotel's pool before they took a short break to eat pizza. LaToya had become overwhelmed by watching the children, and she contacted various cousins and friends in an attempt to summon help. Unfortunately, no one else arrived.

The pool was three feet deep at its shallowest point and sloped down to five feet in the middle. The hotel had no staff monitoring the pool area, but signs prominently stated that there was no lifeguard present. Because none of the children was more than five feet tall and only two could actually swim, LaToya instructed the children to stay in the shallow areas of the pool and not go into the middle where the pool was its deepest. There were no ropes or floatation devices strung across the pool, but LaToya did state that she saw a "flotation doughnut with a rope on it" somewhere in the pool area.

While the older children swam, LaToya remained on the pool deck, watching her infant son. Despite doing her best to watch both her baby and the older children in the water, at some point LaToya lost sight of Domonique. When LaToya's attention was brought back to the pool, she discovered her son lying on the bottom, near the five-foot-deep area. LaToya did not see Domonique move to the deeper area of the pool nor did she see him struggling or having a difficult time staying afloat.

Upon realizing that Domonique was in trouble, LaToya began to scream for help and one of the other children pulled Domonique from the water. Domonique had been underwater from anywhere between one and five minutes, according to the emergency medical services records and an autopsy report, and was not breathing when he was pulled from the pool. Someone, most likely a guest of the hotel, tried to revive him through CPR. By this time the hotel's front-desk personnel had been alerted and 911 had been called. Comfort Inn's desk manager attempted to use the hotel's automated external defibrillator machine on Domonique, but neither she nor anyone else at the hotel

that evening knew how to operate it. When ambulance personnel arrived they also attempted to resuscitate Domonique, but they were unsuccessful.

The Ingham County Health Department conducted an inspection of defendant's swimming pool in response to Domonique's death. The report found that the pool and the pool area were mostly in compliance, including properly posted depth markers, properly posted signage warning that there was no lifeguard, and proper other safety equipment on hand. The report found a few minor concerns (such as the need to add a drinking fountain), but it notably ordered defendant to "install lifelines as required." However, because the water did not exceed five feet in depth, lifelines were not actually required, Mich Admin Code, R 325.2132(10), and the inspectors confirmed that the order to install lifelines should not have been in the report. The inspectors also confirmed that no lifeguard was required at defendant's pool and that the pool did have proper "no lifeguard on duty" signage.

LaToya, as the personal representative of Domonique's estate, filed claims against defendant Central Michigan Inns, Inc., the owner of the Comfort Inn where Domonique drowned, including wrongful death, nuisance, and loss of consortium. Defendant moved for summary disposition, arguing that it had no duty to protect Domonique because the pool was an open and obvious danger.[1] The trial court agreed and granted summary disposition in defendant's favor. Plaintiff moved for reconsideration, arguing that the wrongful-death claim was premised on a negligence theory, not a premises-liability theory, and that the open and obvious

---

[1] Because plaintiff has not presented any arguments on appeal pertaining to the trial court's dismissal of her nuisance and loss-of-consortium claims, we likewise decline to discuss them.

danger doctrine therefore did not apply. The trial court granted reconsideration on that basis. Defendant again moved for summary disposition, arguing that it had no duty to supervise Domonique under the circumstances. The trial court agreed and again granted summary disposition in defendant's favor. Plaintiff now appeals.

This Court reviews a trial court's grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden*, 461 Mich at 120. When reviewing a motion under MCR 2.116(C)(10), the Court considers all the evidence submitted by the parties in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. Summary disposition will be granted only where the evidence fails to establish a genuine issue regarding any material fact. *Id.*

Plaintiff argues, correctly, that the open and obvious danger doctrine does not apply to ordinary negligence claims and landowners owe a duty to exercise reasonable care to protect children from dangerous conditions on their premises notwithstanding the presence of the children's parents. *Woodman v Kera, LLC*, 280 Mich App 125, 154; 760 NW2d 641 (2008) (opinion by TALBOT, J.). However, although "[l]andowners owe minor invitees the highest duty of care," this duty arises in the context of premises liability claims only. *Id.*, citing *Bragan v Symanzik*, 263 Mich App 324, 335; 687 NW2d 881 (2004). *Woodman* stated that such a duty pertains to a premises-liability claim, and not a negligence claim. *Woodman*, 280 Mich App at 154. Terms such as "premises possessor" and "dangerous condition on the land" relate to the elements of a premises liability, rather than ordinary negligence, claim. Because plaintiff herself stated that her cause of action sounded in ordinary

negligence, rather than premises liability, the portions of *Woodman* on which she relied are irrelevant.[2] "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008) (quotation marks and citation omitted).

The trial court correctly recognized that property owners generally owe no duty to supervise minor children of guests on their property. In *Bradford v Feeback*, 149 Mich App 67; 385 NW2d 729 (1986), the plaintiffs' minor child had been injured while playing on the defendants' property. While *Bradford* was mostly a premises-liability case, the plaintiffs argued, among other things, that the "defendants had a duty to supervise and control the children of guests invited onto the property." *Id.* at 71. This Court disagreed, explaining that "as a matter of public policy, property owners should not be charged with the duty of supervising and controlling children of guests who have been invited onto the property." *Id.* at 71-72. Public policy would be further contravened if defendant businesses like the Comfort Inn who operate their pools in compliance with all relevant rules and regulations were required to have staff present to supervise and control minor guests on their premises.

The trial court also properly relied on *Stopczynski v Woodcox*, 258 Mich App 226; 671 NW2d 119 (2003),

---

[2] Plaintiff did not provide pinpoint citations or other clear articulation of the specific reasoning in *Woodman* on which she relied. Our review revealed that the only plausibly applicable portions of *Woodman* discussed premises-liability concepts. Furthermore, that discussion is not binding on this Court because the two concurring opinions in *Woodman* did not explicitly agree with or discuss those legal principles. See *People v Sexton*, 458 Mich 43, 65; 580 NW2d 404 (1998).

which adopted and explained the dissenting opinion in *Pigeon v Radloff*, 215 Mich App 438; 546 NW2d 655 (1996), lv den and ordered to have no precedential force or effect 451 Mich 885 (1996).[3] Like the case here, *Stopczynski* involved a wrongful-death claim based on the decedent's drowning death in the defendant's pool. The plaintiff brought a negligence claim, arguing that the defendant had a duty to protect and supervise the decedent while she used the pool because of her status as a guest and a minor. This Court held that defendant landowners have an affirmative duty to supervise minor guests only when a minor guest is *unaccompanied* by a parent and the defendant has voluntarily assumed a duty to supervise the child. *Stopczynski* at 236, quoting *Pigeon* at 448-450 (SAWYER, P.J., dissenting). Domonique was accompanied by his mother and she was present to supervise him at all times on the day in question, and defendant did nothing to indicate that it had voluntarily assumed a duty to protect and watch Domonique.

This Court has mentioned that recreational facilities "may" have a duty to supervise children simply because of their age. *Dillon v Keatington Racquetball Club*, 151 Mich App 138, 142; 390 NW2d 212 (1986). However, this Court mentioned that possibility as *only* being a possibility, and moreover it did so in dicta. In a much earlier case, a panel of this Court indicated that whether the owners of a trailer park had a duty to provide a lifeguard or lifesaving equipment at a small lake on their property should be a question for the jury, and it discussed the concept of negligence. *Kreiner v Yezdbick*, 22 Mich App 581, 587; 177 NW2d 629 (1970). But, again critically, *Kreiner* discussed that duty in the

---

[3] This Court was free to adopt the reasoning in the dissent because our Supreme Court had ordered *Pigeon* to have no precedential force or effect. *Stopczynski*, 258 Mich App at 232.

context of the defendants' duty to make their premises reasonably safe for their invitees, so while this Court did not say so explicitly, *Kreiner* appears to have also been a premises-liability case. *Id*. In further contrast to the case at bar, this Court recently imposed possible liability on a recreational organization, on a negligence theory, for failing to properly supervise cheerleaders, one of whom was allegedly injured as a result. *Sherry v East Suburban Football League*, 292 Mich App 23; 807 NW2d 859 (2011). Notably, the minors in *Sherry* were unaccompanied by their parents, and the defendants had assumed responsibility for supervising the minors.

Plaintiff's reliance on *Woodman* is misplaced because her case sounds in ordinary negligence and not premises liability. Defendant had no duty to supervise under the circumstances of this case. We need not consider defendant's additional arguments

Affirmed.

K. F. KELLY, P.J., and M. J. KELLY, J., concurred with RONAYNE KRAUSE, J.