# STATE OF MICHIGAN

# COURT OF APPEALS

---

DENNIS LaLONE AND DIANNE LaLONE as
Conservators of the ESTATE OF BRANDON
LaLONE, and CHRISTOPHER T. HAENICKE as
Next Friend of AUSTIN W. LaLONE and
BRYANNA E. LaLONE, minors,

       Plaintiffs-Appellants,

v

RIEDSTRA DAIRY LTD,

       Defendant-Appellee,

and

RT ENGINEERING LTD f/k/a ROTA-TECH
DAIRY SHEDS INTERNATIONAL LTD, RT
INTERNATIONAL LTD f/k/a ROTA-TECH
DAIRY SHEDS INTERNATIONAL LTD, RT
INSTALLATIONS LTD, DeLAVAL INC, and
JOHN BOWERS,

       Defendants.

UNPUBLISHED
June 25, 2015

No. 320774
St. Joseph Circuit Court
LC No. 07-000914-NH

---

Before: DONOFRIO, P.J., and O'CONNELL and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order, following remand from this Court, granting summary disposition in favor of defendant as to plaintiff's claim sounding in ordinary negligence. This litigation arises out of a horrific injury suffered by a maintenance worker while repairing a "rotary milking parlor" at defendant's dairy farm. We affirm.

In the prior appeal, which arose out of the trial court's denial of summary disposition as to plaintiff's claim sounding in premises liability, this Court recited the facts as follows:

       In 2006, Riedstra Dairy purchased a rotary milking parlor from defendant, DeLaval, Inc. (DeLaval). DeLaval Direct Distribution, a branch of DeLaval,

-1-

employed LaLone as a service technician. LaLone was one of the employees who installed the parlor. The parlor began operating on December 18, 2006, but it began to malfunction later in 2006 and required frequent repairs.

Craig Davis, a DeLaval employee, testified that LaLone was at Riedstra Dairy for about 5 hours before he was injured. Steven McCaul, a DeLaval service technician, testified that he and LaLone were working in the same stall at the time of the accident. According to McCaul, LaLone finished his job below the rotary platform and joined McCaul on top of it. While McCaul's back was to LaLone, he heard LaLone say "air line fell off." McCaul testified that he did not see the accident, but that LaLone would have reached into the take-off cabinet to reconnect the air line.

A rotary milking parlor has both a "kick rail," which is a lower rail that prevents the cows from kicking the workers who attach the milking hoses to the cows' udders, and a "breech rail," which prevents the cows from backing up over the kick rail. These rails are attached to vertical support bars, and together form an I-shape. LaLone put his head between the kick and breech rails, and his head was crushed between the stationary vertical bar and the take-off cabinet on which he was working. He was severely injured.

* * *

On September 5, 2007, LaLone filed his original complaint against Riedstra Dairy, asserting theories of general negligence and premises liability. LaLone asserted that it was reasonably foreseeable that the rotary parlor might trap and injure a person's head and that Riedstra Dairy failed to warn LaLone of this danger. Riedstra Dairy denied that LaLone's injury was foreseeable, and responded that either DeLaval or the RT defendants, from whom DeLaval purchased the rotary parlor design, were responsible for LaLone's injury because they had defectively designed the rotating parlor and failed to warn Riedstra Dairy about the dangers associated with it.

In November 2008, Riedstra Dairy moved for summary disposition under MCR 2.116(C)(10) on LaLone's premises liability claim. Riedstra Dairy asserted that the pinch point was open and obvious or, in the alternative, that Riedstra Dairy did not know and could not have known of it. LaLone responded that these issues were questions of fact, and asserted that Riedstra Dairy created the dangerous condition by requiring the parlor to operate while it was being repaired. LaLone attached the affidavit of Gary Huitink to its response. Huitink indicated that the rotary parlor's product literature did not address the pinch-point hazard and that someone not trained as an engineer would not be able to identify the pinch point by "incidental, informal, incremental, or haphazard inspection."

The trial court determined that whether the danger was open and obvious or whether Riedstra Dairy required the parlor to operate while it was being repaired were questions of fact and denied Riedstra Dairy's motion for summary disposition.

In February 2009, Riedstra Dairy moved for summary disposition under MCR 2.116(C)(10) on LaLone's general negligence claim. The trial court granted Riedstra Dairy's motion, determining that there was no question of fact concerning whether Riedstra ever directed DeLaval not to shut the parlor down while repairing it.

In February 2011, after discovery concluded, Riedstra Dairy again moved for summary disposition on LaLone's premises liability claim, asserting the same grounds as it had in its previous motion. The trial court denied Riedstra Dairy's motion, determining that whether Riedstra Dairy should have been aware of the danger was an issue of fact. [(*LaLone v Riedstra Dairy LTD*, unpublished opinion per curiam of the Court of Appeals, Docket No. 308207 (issued Aug 13, 2013) (hereinafter "*LaLone I*"), slip op at pp 1-3).]

This Court concluded that Riedstra Dairy was not absolutely excused from a duty to protect LaLone from the danger posed by the rotary parlor on the theory that Riedstra Dairy had hired LaLone to correct a dangerous condition, because LaLone "was not injured by the *precise condition* that he was hired to repair." *Id*. at pp 4-5 (emphasis in original). However, this Court found that reasonable minds could not differ that Riedstra Dairy could not have known about the pinch-point hazard, and there was no evidence that Riedstra Dairy created the pinch-point hazard, so the trial court erred in failing to grant summary disposition in favor of Riedstra Dairy on the premises liability claim. *Id*. at pp 5-7.

On remand, the trial court addressed plaintiffs' *negligence* claim. The gravamen of the trial court's ruling was that although Riedstra Dairy undisputedly did not *want* the rotary parlor shut down during servicing, it did not in any way *prevent* plaintiff's employer from doing so had plaintiff's employer so desired. A significant issue on appeal is whether this Court's prior opinion, in which only plaintiff's *premises liability* claim was at issue, has any preclusive effect against plaintiff's theories now. Plaintiffs concede that this Court is bound to the conclusion that Riedstra Dairy could not have discovered the pinch-point hazard by exercising reasonable care, however asserts that this conclusion is irrelevant to his negligence theory. In sum, plaintiffs argue that Riedstra Dairy was negligent for failing to make inquiries from which it would have learned that operating the rotary parlor during servicing posed an unreasonable risk of harm.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. We review de novo as a question of law whether the law of the case doctrine applies. *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

The law of the case doctrine binds appellate courts and any lower courts to determinations made in any prior appeal. *Grievance Administrator v Lopatin*, 462 Mich 235, 259-260; 612 NW2d 120 (2000). The doctrine has important limitations: it applies only to issues actually decided, whether explicitly or implicitly, and if the facts and applicable law remain substantially the same. *Id*.; *Ashker*, 245 Mich App at 13. The doctrine is sufficiently

important that absent a rehearing, an appellate court may not modify its own determinations irrespective of whether the prior determinations were actually correct. *Muilenberg v The Upjohn Co*, 169 Mich App 636, 641-642; 426 NW2d 767 (1988). The purpose of the doctrine is to achieve finality in judgments. *Cipriano v Cipriano*, 289 Mich App 361, 376; 808 NW2d 230 (2010). Despite its importance, if the law or facts change materially after the prior decision, the law of the case doctrine will no longer be applied. *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

Plaintiffs correctly argue that a premises liability claim is distinct from a negligence claim, and the two claims depend on different legal principles even if they might arise out of the same facts. See *Wheeler v Central Michigan Inns*, 292 Mich App 300, 304-307; 807 NW2d 909 (2011). In its prior opinion, this Court *referenced* the negligence claim, but it expressed no opinion thereon beyond merely observing that the trial court had granted summary disposition as to that claim. *LaLone I*, slip op at pp 6-7. This Court has not made an explicit determination that plaintiffs' negligence claim must fail. However, this Court *has* explicitly determined that defendant did not affirmatively direct the rotary parlor to continue operating while being serviced and could not have discovered through an exercise of ordinary care that it would be dangerous to allow that continued operation. That conclusion was based in part on the negligence claim having been, at the time, disposed of. However, it was *independently* supported by this Court's own analysis of the evidence. *LaLone I*, slip op at pp 6-7. Consequently, this Court has explicitly determined that "no reasonable mind could conclude that Riedstra Dairy created the dangerous condition that injured LaLone." *LaLone I*, slip op at p 7.

Plaintiffs' argument is that defendant should have gone above and beyond what it could readily discover on its own and make affirmative inquiries from which it would have become aware of the pinch-point danger, and on that basis should have ordered the rotary parlor shut down during servicing. A prima facie negligence claim requires, *inter alia*, the defendant to owe a duty to the plaintiff and the defendant to have breached that duty. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). By default, a defendant's duty is to exercise "reasonable care," which is synonymous with "ordinary care" and "means the care that a reasonably careful person would use under the circumstances." *Id*. at 6-7.

An assessment of a defendant's conduct for compliance with that standard is *usually* a question for the jury. *Id*. at 7. However, this Court has already determined that defendant would not have discovered the pinch-point hazard through the exercise of reasonable care. *LaLone I*, slip op at p 5. Consequently, this Court has, by necessary implication, determined that making the additional inquiries plaintiff describes would constitute conduct going above and beyond the duty defendant actually owed, so the failure to do so is not a violation of that duty,

-4-

notwithstanding plaintiffs' argument that Riedstra Dairy had a financial interest in the parlor continuing to operate. It is therefore inescapable that, even though ordinary negligence was not explicitly before this Court in its prior opinion, this Court has made determinations that preclude plaintiff's ordinary negligence claim pursuant to the law of the case doctrine. Plaintiffs argue that Riedstra Dairy had a duty to make affirmative inquiries into the possibility of dangers that were not obvious and that the installer had not already disclosed, presumably on the conjecture that the installer would only disclose a significant known danger upon a direct demand. This argument would effectively create a duty retrospectively upon a determination of a possible but-for chain of causation, which is standing alone simply not a legal basis for creating a duty.

Affirmed.

/s/ Pat M. Donofrio
/s/ Peter D. O'Connell
/s/ Amy Ronayne Krause