*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SORIN Z. MIHALTAN, Personal Representative of
the ESTATE OF SORIN MIHALTAN SR.,

UNPUBLISHED
February 9, 2023

Plaintiff-Appellee,

v

No. 359598
Wayne Circuit Court
LC No. 20-012645-NO

REDFORD TOWNSHIP HARDWARE REALTY,
LLC and REDFORD TOWNSHIP HARDWARE,
INC.,

Defendants-Appellants.

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

Defendants appeal by leave granted[1] the trial court order denying their motion for summary disposition and the order denying their motion for rehearing/reconsideration of the order denying their motion for summary disposition. We reverse and remand for entry of summary disposition in defendants' favor.

The facts in this wrongful death action are largely undisputed. Defendant, Redford Township Hardware, Inc., conducts business as Township True Value Hardware in Redford, MI, and defendant, Redford Township Hardware Realty, LLC, owns the real property on which Township True Value Hardware ("True Value") conducts business. As acknowledged by the parties and established by video camera surveillance footage, on February 29, 2020, at approximately 6:00 p.m., plaintiff's decedent Sorin Mihaltan Sr.("Mihaltan") went to True Value as a customer.

The customer entrance to True Value is located on the southwest corner of the building and Mihaltan parked his car in one of the ten nose-in parking spaces located on the south side of the

---

[1]*Estate of Sorin Mihaltan Sr v Redford Twp Hardware Realty*, unpublished order of Court of Appeals, entered April 1, 2022 (Docket No. 359598).

-1-

building. The ten spaces are separated from each other by yellow lines and there is one continuous yellow line located about four feet out from the building and running the length of the building that provides a walkway to the store entrance. On the date Mihaltan visited the True Value, there were winter items for sale, such as bags of rock salt, piled on pallets in the majority of the four-foot walkway space in front of the building. The east end of the walkway contained two propane gas tank cages, in front of which were four posts protecting the cages.

As shown on the video footage, Mihaltan parked his vehicle in a nose-in space several spaces down from the customer entrance and proceeded to walk along the available edge of the walkway line toward the entrance. A U-Haul truck was parked, with its engine running and two occupants in it, a few spaces closer to the entrance than Mihaltan's vehicle. As Mihaltan passed in front of the U-Haul, it slowly began moving toward the building. Mihaltan moved away from the U-Haul and closer to the building, into the only area in the walkway that was free from pallets and other items (which, incidentally, was directly in front of the U-Haul). As he did so, the U-Haul suddenly lurched forward, crushing him between the truck and the building.[2] Approximately six weeks later, Mihaltan died from the injuries he sustained in the incident.

Mihaltan's estate, through its personal representative (plaintiff), filed suit against defendants. In a first amended complaint, plaintiff asserted negligence in defendants' failure to maintain their premises in a reasonably safe manner, namely: failing to design the parking lot to provide a safe manner of ingress and egress from parking spaces and failing to provide barriers between nose-in parking spaces and the store front to prevent this type of accident. Plaintiff also claimed that defendants were negligent in that they breached their duties as possessors of land to protect Mihltan from the foreseeable negligent acts of the U-Haul driver. Plaintiff moved to file a second amended complaint, which the trial court granted but, before plaintiff actually filed its amended complaint, defendants moved for summary disposition under MCR 2.116(C)(8) and (10).

Defendants asserted that the parking lot configuration, lack of safety devices, and the existence of potentially errant vehicles in the parking lot were open and obvious and subject to no exceptions, thereby absolving defendants of any liability. Defendants additionally argued they owed no duty where it was not reasonably foreseeable that the configuration of the parking lots, the lack of safety devices between the storefront and parking spaces, or the unforeseen acts of the nonparty driver of the U-Haul truck would lead to Mihaltan's claimed injuries or plaintiff's damages. Finally, they argued there are no genuine issues of material fact, thus entitling defendants to judgment as a matter of law.

Plaintiff responded that the allegations in the complaint do not lie solely in premises liability, but in defendants' negligence in exposing Mihaltan to the foreseeable negligent acts of third persons as well. It also responded that the negligent acts of third parties are not conditions of the land and are thus not subject to the open and obvious defense, and that the accident was foreseeable, based on evidence that nationwide, there are 500 deaths each year, and 4,000 nonfatal injuries, from these types of accidents. Finally, plaintiff's second amended complaint would add

---

[2] It appears that the driver of the U-Haul stated that her leg cramped up, causing her to push on the accelerator of the U-Haul.

a claim of negligence premised upon defendants' active negligence in creating a new hazard by placing pallets of sales goods in the walkway leading to the store's only customer entrance.

The trial court held a hearing on the summary disposition motion on June 21, 2021 and took the motion under advisement. On the same day, plaintiff filed its second amended complaint, adding a second count of negligence for defendants' alleged creation of a dangerous condition by placing pallets in the only path of travel provided from the parking spaces to the customer entrance.

On September 2, 2021, the trial court issued an opinion and order denying defendants' motion for summary disposition. The trial court noted that there were two issues for it to decide: whether the conditions of the land were open and obvious and whether the acts of the third-party U-Haul driver were foreseeable. The trial court found that the conditions were not open and obvious, opining that the condition of the land causing the accident (a truck crashing into Mihaltan) was not discoverable upon casual inspection to an average person with ordinary intelligence. The trial court, relying primarily upon statistical evidence provided by plaintiff showing that there were approximately 500 deaths per year and more than 4000 non-fatal injuries per year nationwide due to storefront crashes, opined the actions of the negligent third parties were, however, foreseeable. Defendants moved for reconsideration, which the trial court denied and, after this Court granted leave to appeal, the trial court entered a stipulated order staying the trial court proceedings pending the outcome of the proceedings in this Court.

As this Court explained in *Dalley v Dykema Gossett*, 287 Mich App 296, 304–305; 788 NW2d 679 (2010):

> This Court reviews de novo a circuit court's summary disposition ruling. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). A court may grant summary disposition under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342 (2004).[] When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). Summary disposition on the basis of subrule (C)(8) should be granted only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

On the other hand, when reviewing a motion brought under subrule (C)(10), this Court must examine the documentary evidence presented to the circuit court and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists to warrant a trial. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bank of Am,*

*NA v Fid Nat Title Ins Co*, 316 Mich App 480, 488; 892 NW2d 467 (2016), (quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003)). Because the trial court reviewed video footage, photos, and documents in making its summary disposition ruling, we will treat this matter as having been decided under MCR 2.116(C)(10).

Michigan law distinguishes between a claim of ordinary negligence and a claim of premises liability. *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 625; 971 NW2d 716 (2021). A negligence claim stems from the basic idea that "[e]very person who engages in the performance of an undertaking has an obligation to use due care or to act so as not to unreasonably endanger the person or property of another." *Laier v Kitchen*, 266 Mich App 482, 494; 702 NW2d 199 (2005), quoting 18A Michigan Civil Jurisprudence, Negligence, § 15, p 103. In a negligence claim, the theory of liability determines the specific obligation (duty) owed. *Id*. at 493.

In a premises liability action, though, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land. *Jahnke v Allen*, 308 Mich App 472, 475; 865 NW2d 49 (2014). "Terms such as 'premises possessor' and 'dangerous condition on the land' relate to the elements of a premises liability, rather than ordinary negligence, claim." *Id*. If it is alleged that the plaintiff's injuries arose from a dangerous condition on the land, the claim is one of premises liability rather than one of ordinary negligence. *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). Courts are not bound by the labels parties affix to their claims; rather, the gravamen of an action is determined by considering the plaintiff's complaint as a whole. *Id*. at 691.

In its first amended complaint, plaintiff's first count is entitled "Negligence." The specific allegations in that count are:

38. Defendants failed to maintain their premises in a reasonably safe manner in the following ways:

39. Failure to design the parking lot to provide a reasonably safe manner of pedestrian ingress and egress from designated parking spaces to the customer entrance of the business.

40. Failure to provide bollards[3] or another suitable barrier between nose-in parking spots and the store front where customers would be expected to be present.

41. Failure to provide bollards or another suitable barrier between the nose-in parking spots facing the building and the route where customers would be expected to walk to get from the designated parking spaces to the customer entrance to the store.

---

[3]A "bollard" is "any of a series of short posts set at intervals to delimit an area (as a traffic island) or exclude vehicles." *Merriam-Webster's Collegiate Dictionary* (11th Ed.).

-4-

42. Defendants' failure to maintain their premises as outlined above was a proximate cause of Mr. Mihaltan's injuries and Plaintiffs damages.

The above allegations appear to present a claim for premises liability. Plaintiff's allegations concern the design of the parking lot and defendants' failure to take specific cautionary measures to ensure the safety of customers when walking from the parking lot into defendants' building, not on defendant's ability to conform to a particular standard of care. Parking lot design and a lack of barriers are necessarily "conditions of the land" and implicate defendants' liability based upon their status simply as owners/possessors/occupiers of the land upon which the incident occurred." See, e.g., *Richardson v Rockwood Ctr*, 275 Mich App 244, 248; 737 NW2d 801 (2007) (finding that the hazards associated with a pedestrian moving through a parking lot and across traffic lanes to a store sound in premises liability and were open and obvious).

A plaintiff must prove the same elements in a premises liability action that are required in a negligence action: "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013). The duty element represents the legal obligation that arises from the relationship between the parties. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 614; 537 NW2d 185 (1995). The relationship between a business owner who holds his business open to the public and a member of the public who visits the business for commercial purposes is that of landowner-invitee. *Sanders*, 303 Mich App at 5. A landowner "has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000), as amended (Sept. 19, 2000) (internal citation omitted). But this duty does not extend to dangerous conditions that are open and obvious. *Estate of Livings v Sage's Inv Group, LLC*, 507 Mich 328, 337; 968 NW2d 397 (2021). An open and obvious danger is one that is known to the invitee or is so obvious that the invitee might reasonably be expected to discover it. *Id*.

As our Supreme Court explained in *Lugo v Ameritech Corp, Inc,* 464 Mich 512, 516; 629 NW2d 384 (2001), the open and obvious danger doctrine should not be viewed as an exception to the duty generally owed to invitees; rather, it is an integral part of the definition of that duty. It is only if one of two special aspects of the open and obvious condition exist that liability could nevertheless arise: where the danger is unreasonably dangerous or when the danger is effectively unavoidable. *Estate of Livings*, 507 Mich at 338.

In its opinion, the trial court determined that:

It may be open and obvious that no bollards or other safety devices were placed in the parking lot and pallets were placed against the wall of the storefront. However, the condition on the land which directly caused harm to Mr. Mihlatan [sic] and led to his death was the motor vehicle that crashed into him. An average person with ordinary intelligence would not discover upon casual inspection that an operator of a motor vehicle would lose control of their vehicle in a parking lot and crash into a person.

Defendants direct this Court to *Cornwell v Castaneda*, unpublished per curiam opinion of the Court of Appeals, issued September 17, 2020 (Docket No. 347563) to support their argument that the conditions complained of by plaintiff were open and obvious and that the trial court thus should have granted summary disposition in their favor. In *Cornwell*, the plaintiff was sitting on a bench in a Verizon store, with her back to the parking lot. Starting at the building and heading to the parking area, there was a sidewalk with a curb, a two-lane right-of-way for vehicles entering and exiting the strip mall, and then parking spaces set perpendicular to the storefront. *Cornwell*, unpub op at 1 (Docket No. 347563). "While [the defendant] was attempting to park in one of the perpendicular spaces in front of the Verizon store, she lost control of her vehicle, crossed the two-lane right of way, jumped the curb, crossed the sidewalk, and crashed through the Verizon storefront, hitting the plaintiff." *Id*. at 2. The plaintiff sued the driver as well as the landlord, K&M Real Estate, LLC, and the tenant, Verizon. *Id*. at 1.

This Court first analyzed whether the matter sounded in premises liability or ordinary negligence. Much like the present case, the plaintiff "alleged that K&M was liable for her injuries because the way it designed its parking lot—namely by painting parking lines perpendicular to the Verizon storefront and not installing any additional safety 'devices including but not limited to bollards'—caused (at least to some extent) [the driver's] vehicle to crash into Verizon's storefront." *Id*. at 3. The plaintiff alleged that Verizon was liable due to how it arranged its store (with benches next to the front window, placing the plaintiff in the vehicle's path) and for failing to install exterior or interior safety devices, such as bollards, to stop or deflect any oncoming vehicles. *Id*. This Court concluded that these claims sounded in premises liability because ultimately, the plaintiff alleged dangerous conditions of the premises. *Id*. This Court then explained that all of the allegedly defective conditions (how the parking lines were painted, the lack of protective measures, the placement of the bench, etc.) were open and obvious and without special aspects. *Id*. at 5.

While *Cornwell* is not binding precedent (MCR 7.215(C)(1)), we find it particularly instructive in this matter where, for all practical purposes, the facts are substantially similar to those in *Cornwell*. In count one of its first amended complaint, plaintiff sought to impose liability against defendants because of how the parking lot was set up, and the lack of protective devices. Those conditions of the land were readily observable upon casual observation to anyone entering the parking lot. Plaintiff has offered no argument otherwise, nor has it suggested that the conditions were effectively unavoidable or unreasonably dangerous. Indeed, plaintiff offers no argument on how the specific allegations contained in count one of its first amended complaint do not sound in premises liability or how they are not barred by the open and obvious doctrine. Instead, plaintiff focuses solely on the allegations contained in count two of the first amended complaint. A party may not leave it up to this Court to discover and rationalize the basis for his claims. *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998). That being true, and otherwise finding that count one sounds in premises liability and that the allegations in count one concern conditions on the land that are open and obvious and subject to no exceptions, the trial court erred in failing to grant summary disposition in defendants' favor on count one of plaintiff's first amended complaint.

Count two of plaintiff's first amended complaint is also entitled "negligence." The specific allegations in that complaint are:

43. Possessors of land who hold it open to the public for entry for their business purposes, like Defendants, are subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental or negligent harmful acts of third persons.

44. Defendants failed to exercise reasonable care to discover whether such accidental or negligent acts were likely to occur, or give a warning adequate to enable business visitors to avoid the harm, or otherwise to protect them against it.

45. Defendants had a duty to protect Plaintiff's decedent from the foreseeable negligent and/or accidental conduct of third parties.

46. The negligent/accidental act of the third-party business invitee (the pedal accident) was reasonably foreseeable.

47. Defendants' failure to protect Plaintiff's decedent from the foreseeable negligent/accidental conduct of third parties proximately caused Plaintiff's decedent's injuries and death.

The trial court did not specify whether it found the allegations in count two to serve as a claim of premises liability or negligence, but the allegations also appear to be a claim for premises liability. Notably, plaintiff references defendants' position as a possessor of land, holding their property open to the public for business purposes and defendants being subject to liability to persons coming onto their property for business purposes. Likewise, plaintiff describes the specific duties owed to Mihaltan as a business invitee, and how defendants breached those duties.

On the issue of foreseeability of the harm suffered by Mihaltan, the trial court opined that plaintiff:

provided evidence that between 2014 and 2020 there were approximately 500 deaths per year and more than 4,000 non-fatal injuries nationwide due to storefront crashes. As accidents similar to the accident that occurred in this case are likely to happen, the acts of [] the negligent third party, were foreseeable.

This evidence was derived from Exhibit 8 to plaintiff's response to defendants' motion for summary disposition, which is a lengthy affidavit prepared by Robert Reiter, the principal of Reiter and Reiter Consulting, Inc. According to the affidavit, the firm provides consulting, product development, and business services for companies worldwide related to the prevention of vehicle incursions into commercial and public areas. In the affidavit, Reiter references his research and statistics concerning storefront crashes. Reiter analyzed the video of the incident and defendants' layout of the parking spaces and lot and ultimately opined:

48. Because of my research, experience, and training as an expert in the areas of pedestrian injuries due to vehicle incursions in parking lots, sidewalks and storefronts, and retail parking lot and pedestrian safety, it is my opinion that a hazardous condition was present at this location that was unaddressed by the defendants. There was no safe path of travel for pedestrians anywhere along the store frontage, so customers like Mr. Mihaltan was in fact unprotected from

wayward vehicles. The presence of pallets of merchandise for display or sale on either side of the area where Mr. Mihaltan was walking when struck by the U-Haul likely acted as entrapments, which created an added hazard [] by preventing any chance of evasion. The failure of the defendants to protect pedestrians and invitees at the True Value Hardware store was negligent.

49.     Had effective and affordable safety devices such as bollards been installed to protect this portion of the storefront, no vehicle incursion into this pedestrian-only area would have occurred, and no injuries would have been suffered by Mr. Mihaltan on that day, 29 February 2020. The negligent behavior on the part of the defendants resulted in the absence of safety barriers to offer protection to the plaintiff in the foreseeable event of a vehicle failing to stop at the end of a marked parking space. As a result, the plaintiff was very seriously injured.

The trial court's reliance on the affidavit to deny summary disposition is troublesome for several reasons.  First, Reiter's affidavit speaks to safety barriers and protective measures defendants should have had in the parking lot—issues brought up in count one of plaintiff's complaint and undeniably sounding in premises liability.  The hazardous conditions that Reiter indicates are present in defendants' parking lot were open and obvious conditions, as previously discussed.

Second, the actual statistics cited by the trial court—between 2014 and 2020 there were approximately 500 deaths per year and more than 4,000 non-fatal injuries nationwide due to storefront crashes—appear to be gleaned from paragraphs 10 and 30 of the affidavit.  In paragraph 10, Reiter swears, "In addition, storefront crashes occur as in excess of 20,000 times per year in the United States, and each year as many as 500 people are killed and more than 4,000 people are seriously injured in what are almost always preventable incidents. See the National Institute of Building Sciences/Whole Building Design Guide: https://www.wbdg.org/design-objectives/secure-safe."  However, that specific statistic does not appear on that specific site page.[4]

---

[4]There is a section of that website that briefly mentions Storefront and Public Space Safety and states that:

> According to the latest data from the Storefront Safety Council[] Vehicle-into-Building crashes occur 100 times a day causing nearly 2,600 deaths and more than 16,000 injuries annually. Further, forty-six percent of all storefront crashes result in an injury and eight percent result in a fatality. These figures, reviewed by Lloyd's of London, equate to more than 36,000 storefront crashes every year in the United States.

The "statistics" page of the Storefront Safety Council Website shows a statement that 100 storefront incidents occur every day, with 16,000 injuries annually, 2600 death every year, and 24% happening in retail stores.  Paragraph 30 of Reiter's affidavit states, "We estimate that vehicle-into-building crashes occur more than 60 times per day, which means that there are more than 20,000 such crashes annually. Our very conservative estimate is that as many as 4,000

Third, the trial court's determination that "an average person with ordinary intelligence *would not* discover upon casual inspection that an operator of a motor vehicle would lose control of their vehicle in a parking lot and crash into a person" while at the same time find that a landowner *would* foresee such event happening is logically inconsistent. It is difficult to understand how defendants should have predicted the event at issue long before it happened, and yet at the same time, how Mihaltan would not immediately see the risk of the event (being struck by a clearly running U-Haul) when he chose to walk in front of it.

Fourth, and perhaps most importantly, we find *Cornwell* persuasive, and thus dispositive, on this issue. In *Cornwell*, this Court found that the action of a driver losing control of his or her vehicle in a parking lot was a condition of the land subject to the open and obvious doctrine. This Court explained that in addition to the alleged defective conditions of how the parking lines were painted, the lack of protective measures in the parking lot and the placement of the bench in the Verizon store, there was another condition alleged in the complaint: "the danger of a motor vehicle in the parking lot losing control due to driver error or equipment malfunction and crashing into Verizon's storefront." *Id*. at 5. This Court concluded that, "because it was obvious that motor vehicles were intended to travel on the property at issue, this condition, too, was open and obvious." *Id*. This Court explained:

> Motor vehicles are a ubiquitous part of society, and where motor vehicles travel, the danger posed by their operation follows. One such danger is that an operator of a motor vehicle can lose control of their vehicle, either through negligence or as a result of defective equipment, and crash. This is not a dangerous condition created by a possessor of property, but is a dangerous condition inherent in the operation of a motor vehicle. While the likelihood of an operator of a motor vehicle losing control of the vehicle and crashing it into a building is low, it is an obvious fact that where there are motor vehicles, there is a risk that an operator might lose control of it and crash.
>
> It is a risk that we are confronted with on a near-daily basis—whenever we operate a motor vehicle, walk through a parking lot, walk on a sidewalk next to a street, or even when a motor vehicle drives by our home. When plaintiff entered K&M's parking lot or Verizon's store, the danger posed by motor vehicles—the same danger that plaintiff confronted in order to get to the Verizon store in the first place—did not change. A land possessor's duty to an invitee generally does not extend to providing the invitee with "a safer environment on his premises than his invitees would encounter in the community at large." *Williams* [*v Cunningham Drug Stores, Inc*], 429 Mich [495, 502; 418 NW2d 381 (1988)]. See also *Stanley v Town Square Co-op*, 203 Mich App 143, 151; 512 NW2d 51 (1993)[, lv den 445 Mich 942 (1994)] ("We find that a landlord does not owe a duty to invitees to make open parking lots safer than the adjacent public streets."). This is because land

invitees, employees, and pedestrians are seriously injured each year, with as many as 500 killed." So, the statistics appear to vary and be based on estimates.

possessors "are not absolute insurers of the safety of their invitees," *Bertrand*, 449 Mich at 614, but rather they have a duty to use reasonable care to protect the invitees from unreasonable risks of harm, *Hoffner* [v Lanctoe], 492 Mich [450,] 460[; 821 NW2d 88 (2012)]. For these reasons, we conclude that the danger posed by the possibility of a motor vehicle crashing through a building as a result of non-criminal acts such as driver error is an open and obvious condition of land which motor vehicles travel. [*Cornwell*, unpub op at 5.]

This Court also found that none of the conditions complained of, including the danger posed by the possibility of a motor vehicle crashing through a building as a result of non-criminal acts such as driver error, were subject to special aspects. *Id*. at 7. We too, find that the danger of being hit by a car while traversing a parking lot and/or an area adjoining a parking lot is open and obvious.

While plaintiff has not argued that any special aspects exist here, we would find that, for the reasons explained in *Cornwell*, there are no special aspects present. The danger was not, in this case, effectively unavoidable, as the spaces directly in front of the building we not the only places available for Mihaltan to park in order to patronize defendants' store and he was not compelled to patronize defendants' business at all. As recently stated by our Supreme Court, "the standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Estate of Livings*, 507 Mich at 338. The danger was also not "unreasonably dangerous," as to find otherwise would require us to find that any time someone crossed a parking lot or was in the vicinity of moving cars he or she would be in an unreasonably dangerous situation.

Plaintiff contends that the *Cornwell* Court's ruling:

conflates two separate and distinct tort doctrines and duties which are in turn governed by separate and distinct sections of the Restatement 2d on Torts: the duty of merchants to protect their patrons from the foreseeable negligent acts of third parties, which is governed by § 344 of Restatement of Torts, 2d, and the duty of premises owners/occupiers to keep their premises in a reasonably safe condition, which is governed by § 343 and § 343A of Restatement Torts, 2d.

It does not. Sections 343, 343A, 343B, and 344 all appear in Restatement of Torts 2d under Title E. SPECIAL LIABILITY OF POSSESSORS OF LAND TO INVITEES. Restatement of Torts 2d § 344 states:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

However, comment f states:

> *f. Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

There is no assertion or evidence provided that defendants knew or should have known that the U-Haul truck incident was occurring or about to occur, that similar accidents had happened in the past at defendants' store, or that defendants were familiar with statistics concerning parking lot accidents. Moreover, that, statistically, accidents had happened in other parking lots with drivers and pedestrians in the past does not equate with defendants' knowledge that the incident at issue was foreseeable in its parking lot. The trial court thus erred in denying defendant's motion for summary disposition on count two of plaintiff's complaint.

In sum, all of the conditions complained of by plaintiff in its first amended complaint are conditions of the land, making those claims sound in premises liability. And, all of those conditions are easily observable, making them open and obvious and subject to no special aspects. Defendants were thus entitled to summary disposition in their favor on counts one and two of plaintiff's first amended complaint.

Defendants next contend that this court should additionally reverse the trial court's order denying their motion for reconsideration/rehearing of the summary disposition order because plaintiff's assertion that the presence of bollards or absence of pallets would have prevented the accident is speculative and conjecture. Defendants acknowledge that this specific issue was not decided by the trial court because, at the time of the hearing on defendants' motion for summary disposition, while plaintiff had been permitted to file a second amended complaint adding the above assertions, the second amended complaint had not yet been filed.

In its second amended complaint, filed on the same day the summary disposition hearing was held, plaintiff added a third count, entitled "negligence." The allegations in the third count are:

54. Defendants had a duty to take reasonable precautions to protect business visitors from foreseeable harm.

55. Defendants agents created a dangerous condition and subjected Mr. Mihaltan to foreseeable harm by placing the pallets in the only path of travel provided from the parking spaces to the customer entrance as described above.

56. The dangerous conditions created by Defendants were a cause in fact and a proximate cause of Plaintiffs decedent's injuries and death.

This Court generally does not consider issues not raised below. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). However, we may consider an issue not raised below if it involves a question of law and if the facts necessary for its resolution have been presented. *Poch v Anderson*, 229 Mich App 40, 52; 580 NW2d 456 (1998). That is the case here.

As previously indicated, in its opinion, the trial court determined that:

It may be open and obvious that no bollards or other safety devices were placed in the parking lot and pallets were placed against the wall of the storefront. However, the condition on the land which directly caused harm to Mr. Mihlatan [sic] and led to his death was the motor vehicle that crashed into him.

We, too, believe that the placement of the pallets was open and obvious. Photographs and video establish that the pallets were placed directly against the wall and spanned nearly the entire front wall of the True Value building. The pallets were stacked more than knee high with items in large blue, white and clear bags and were observable upon casual inspection to an average user with ordinary intelligence. There is no claim otherwise, nor is there a viable claim borne out by the presented evidence, that the *only* way for a customer to enter the True Value store was to walk near the pallets.

Moreover, as noted by the trial court, the condition which directly caused harm to Mihaltan was the motor vehicle that crashed into him—the pallets had nothing to do with the U-Haul crashing into Mihaltan. The U-Haul crashed into him because the driver allegedly had a leg cramp that caused her to press the accelerator of the U-Haul and the presence or absence of pallets had no influence on that. As also previously discussed, it would not be logically consistent to find that defendants could and should anticipate this particular risk of harm but that Mihaltan and others in his position could and should not. Thus, the additional allegations in plaintiff's second amended complaint would be futile.

We reverse and remand for entry of summary disposition in defendants' favor.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto

-12-